IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| DIMETRIOUS LEE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:21cv528 |
| | ) | |
| STEGALL, INC., *d/b/a* | ) | |
| BLUE RIDGE TIRE CENTER, | ) | |
| SERVE: | ) | |
| Registered Agent Neil E. McNally | ) | |
| 1143 First St., SW, Ste 201 | ) | |
| Roanoke, Virginia 24016 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Dimetrious Lee (*hereinafter* "Plaintiff" or "Lee"), by counsel, moves for judgment against Defendant Stegall, Inc. *d/b/a* Blue Ridge Tire Center, and as grounds therefore states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Fair Labor Standards Act ("FLSA"), as codified under 29 U.S.C. § 201, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified under 42 U.S.C. §2000e, *et seq*.

2. Venue properly lies in the Roanoke Division of the Western District of Virginia in that all discriminatory and retaliatory acts alleged herein occurred within the Western District of Virginia.

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 22, 2021; he received a Dismissal and Notice of

Rights from the EEOC dated July 13, 2021; he files this Complaint within 90 days of receipt of that Dismissal and Notice of Rights, and he has exhausted all administrative processes.

## PARTIES

4. At all times material hereto, Plaintiff, an African American and black male, is and has been a resident of Roanoke, Virginia.

5. At all times material hereto, Stegall, Inc. *d/b/a* Blue Ridge Tire Center (*hereinafter* "Blue Ridge Tire Center") was a private business operating in Salem, Virginia with fewer than 500 but more than 15 employees.

6. Blue Ridge Tire Center was Plaintiff's employer at all times material hereto as defined under Title VII and the FLSA.

## FACTUAL ALLEGATIONS

7. In or about March 2018, Blue Ridge Tire Center employed Lee full-time as a roadside service technician. In that role, he worked on tractor trailers and was often dispatched to work on broken down vehicles on the interstate and elsewhere.

8. Until June 25, 2020, Mr. Lee worked for Blue Ridge Tire Center without incident or discipline, and he was a good and valuable employee more than satisfactorily fulfilling the obligations of his employment.

9. On June 25, 2020, Lee informed his immediate supervisor, General Manager Jim McCraney, and Blue Ridge Tire Center's president, Andy Stegall, that he felt ill, and he requested to be released from work early.

10. McCraney asked Lee if he could respond to one more call, and quipped, "It may make you feel better," or words to that effect.

11. Despite his illness, and in light of McCraney's request, Lee responded to the service call. Upon completing the service call, Lee returned home.

12. Early the following morning, on June 26, 2020, Lee received a call for service at approximately 4:18 a.m.

13. In response, Lee contacted McCraney at approximately 4:50 a.m. and indicated that he would not be able to perform the service call because he continued to feel ill.

14. Lee also advised McCraney that given his symptoms, *e.g.*, fever, nausea, and headache, he suspected that he may have contracted COVID-19, and that he was going to get tested for COVID-19.

15. McCraney indicated that he approved of Lee taking time off to be tested.

16. Thereafter, Lee then attempted to arrange for coverage of the service call, to no avail. Therefore, Mr. Lee responded to the service call, despite his illness.

17. Lee returned home at approximately 7:30 a.m., after completing the service call, and went to bed.

18. Later in the day of June 26, at approximately 12:00 p.m., Lee received a call from McCraney requesting an update as to his condition/COVID-19 test.

19. Lee informed McCraney that he planned to go to CVS pharmacy at approximately 2:50 p.m. that afternoon to be tested for COVID-19: Lee had scheduled an appointment with CVS pharmacy at 2:50 p.m. that day to be tested for COVID-19.

20. Lee also planned to go to an urgent care facility after his appointment with CVS to be further treated for his illness.

21. At approximately 3:46 p.m. on the 26th, Lee received a text message from Stegall indicating that he wanted Lee to call him.

22. Lee called Stegall as instructed but received no answer. Lee left a voicemail for Stegall regarding the status of his COVID-19 test, *i.e.,* that he had been administered the test but would not know the results for a few days. Stegall did not return Lee's call.

23. After his appointment at CVS, Lee decided that he needed to eat before going to an urgent care facility, because he had not been able to eat earlier in the day.

24. Thereafter, Lee's condition worsened such that he decided to go home to rest and await his COVID-19 test results, rather than go to urgent care.

25. On the evening of June 26, Lee's condition worsened further, necessitating him to be transported via ambulance to the hospital.

26. While at the hospital, Lee's health care provider gave to him a doctor's note directing him and his family to quarantine through July 10, 2020, or until he received his COVID-19 test results indicating that he was negative for COVID-19.

27. On the morning of June 27, 2020, Lee's wife called McCraney, on Lee's behalf, to inform McCraney that Lee had been tested for COVID-19 and that he was awaiting his test results. Lee also informed McCraney that she and her family (including Lee) had been directed to quarantine per a health care provider.

28. Lee's wife explained to McCraney that they could not bring the doctor's note to him at that time due to being quarantined, but that the note would be provided as soon as possible, *i.e.*, as soon as she and the Lee family were no longer required to quarantine.

29. McCraney did not object to Mrs. Lee's assurance to provide Lee's doctor's note as soon as possible.

30. On June 30, 2020, Lee received the results of his COVID-19 test: he was negative.

31. Upon receiving his test result, Lee contacted Stegall to inform him of the result and to request a couple of days off as he continued to feel ill.

32. In response, Stegall told Lee to return his company-assigned truck to Blue Ridge Tire Center.

33. Upon returning the company truck, McCraney informed Lee that he was terminated because he had been a no call, no show.

34. Thereafter, Lee received via mail a Notice of Termination dated June 30, 2020, which indicated, in part, that he "broke one of The Following Actions Are Grounds for Immediate Dismissal on page 2."

35. The Notice of Termination was not clear as to the "action" to which the company referred on page 2 of the referenced Employee Handbook, and Lee, to the best of his knowledge, was never given an employee handbook at the start of his employment to which he could refer.

36. The notice stated further, "On 06/26/2020, 06/27/2020, 06/28/2020, 06/29/2020, & 06/30/2020 you were a no call no show. We have attempted each day to reach you multiple times with no success."

37. The Families First Coronavirus Response Act ("FFCRA") enacted on March 18, 2020, requires covered employers to provide employees with paid sick leave if the employee is unable to work (or telework) due to a need for leave because:

> **(1)** The employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19[;]
>
> **(2)** The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19[; and]
>
> **(3)** The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis [...].

Families First Coronavirus Response Act, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, Sec. 5102(a)(1)(2) and (3).

38. "Covered employers" as defined by the FFCRA "means any person engaged in commerce or in any industry or activity affecting commerce that[,] in the case of a private entity or individual, employs fewer than 500 employees," and "includes any person acting directly or indirectly in the interest of an employer in relation to an employee (within the meaning of such phrase in section 3(d) of the [FLSA] (29 U.S.C. §203(d)))." *Id*. at Sec. 5110(2)(B)(i)(I) and (II).

39. The term "employee" under the FFCRA refers to "an employee, as defined in section (3)(e) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 203(e)[...]", *i.e.*, any individual employed by an employer. *Id.* at Sec. 5110(1)(i); *see* 29 U.S.C. § 203(e)(1) 134.

40. The FFCRA permits full-time employees to take 80 hours of paid sick leave for reasons specified under the FFRCA. Families First Coronavirus Response Act, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, Sec. 5102(b)(2)(A).

41. Pursuant to the FFCRA, it is unlawful "for any employer to discharge, discipline, or in any other manner discriminate against any employee who – [] takes leave in accordance with [the FFCRA.]" *Id*. at Sec. 5104(1); *see also* 29 C.F.R. § 826.150(a).[1]

42. An employer who violates the FFCRA is "considered to have failed to pay minimum wages in violation of section 6 of the Fair Labor Standards Act of 1983 (29 U.S.C. § 206); and be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C.§216; 217) with respect to such violation." Families First Coronavirus Response Act, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, Sec. 5015(A)(1); *see also* 29 C.F.R. § 826.150(b)(2).

---

[1] "On return from Paid Sick Leave [...], an Employee has a right to be restored to the same or an equivalent position in accordance with §§ 825.214 and 825.215 of this chapter." 29 C.F.R. § 826.130(a).

43. Section 5105(b) makes a willful violation of Section 5104 equivalent to a violation of section 15(a)(3) of the FLSA (29 U.S.C. § 215(a)(3)). Families First Coronavirus Response Act, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, Sec. 5015(b); *see also* 29 C.F.R. § 826.150(b)(2).

44. At all times material hereto, Blue Ridge Tire Center was a "covered employer" as that term is defined under the FFCRA.

45. At all times material hereto, Lee was an "employee" as that term is defined under the FFCRA.

46. On June 26, 2020, Lee was experiencing COVID-19 symptoms and seeking medical diagnosis.

47. Between June 26, 2020 and June 30, 2020, Lee was required to quarantine pursuant to a health care provider's directive.

48. Lee took leave between June 26-30, 2020, pursuant to the FFCRA, and Blue Ridge Tire Center was aware of the reasons for Lee's leave during that timeframe.

49. Accordingly, Blue Ridge Tire Center's termination of Lee for missing work for reasons covered under the FFCRA were retaliatory, and in violation of the FLSA.

50. Lee was entitled to receive paid sick leave for missing work pursuant to the FFCRA.

51. Additionally, and/or in the alternative, Lee's race and/or color, *i.e.*, African American and black, was/were (a) motivating factor(s) in Blue Ridge Tire Center's decision to terminate him.

52. Upon information, knowledge, and belief, Blue Ridge Tire Center treated Lee differently than a similarly-situated Caucasian employee under similar circumstances.

53. Lee's Caucasian co-worker also was a roadside service technician and he reported to McCraney.

54. Upon information, knowledge, and belief, McCraney has permitted Lee's co-worker to miss work on at least three (3) occasions since 2018 for extended periods of time (approximately up to 30 days) to allow this employee to receive treatment for health care or medical related issues.

## COUNT I: FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

55. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

56. Plaintiff took sick leave from Blue Ridge Tire Center for reasons provided under the FFCRA.

57. Blue Ridge Tire Center was required to pay, and Plaintiff was entitled to receive payment of, minimum wages for his time missed from work for reasons provided under the FFCRA.

58. Blue Ridge Tire Center failed to pay to Plaintiff minimum wages for his time missed from work for reasons provided under the FFCRA.

59. Accordingly, Plaintiff is entitled to recover, *inter alia*, unpaid minimum wages, liquidated damages, reasonable attorney's fees, and costs.

60. Blue Ridge Tire Center's actions as alleged herein were done intentionally and with reckless disregard for the law and for the impact such actions would have on Lee. Therefore, an award of punitive damages is appropriate and hereby demanded.

## COUNT II: RETALIATION IN
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

61. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

62. Plaintiff engaged in protected activity under the FLSA by taking leave for reasons covered under the FFCRA.

63. Blue Ridge Tire Center knew and/or had reason to know that Plaintiff took leave for reasons covered under the FFCRA, *i.e.*, because he was experiencing symptoms of COVID-19, seeking a medical diagnosis, and was subsequently quarantined pursuant to a health care provider's directive for reasons related to COVID-19.

64. Blue Ridge Tire Center took adverse action against Plaintiff when it terminated him on June 30, 2020, and failed to provide paid leave to Plaintiff that he was entitled to receive pursuant to the FFCRA.

65. Blue Ridge Tire Center terminated Plaintiff for missing work while he was experiencing symptoms of COVID-19, seeking a medical diagnosis, and subsequently quarantined pursuant to a health care provider's directive for reasons related to COVID-19.

66. At all times material hereto, Plaintiff was performing satisfactorily at the time of his termination, and there was no basis to terminate Plaintiff.

67. As a result of Blue Ridge Tire Center's termination of Plaintiff, Plaintiff has suffered lost wages.

68. Plaintiff is entitled to recover, *inter alia*, payment of wages lost, liquidated damages, reasonable attorney's fees, and costs.

69. Blue Ridge Tire Center's actions as alleged herein were done intentionally and with reckless disregard for the law and for the impact such actions would have on Lee. Therefore, an award of punitive damages is appropriate and hereby demanded.

### COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

70. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

71. Plaintiff is a member of a protected class, *i.e.*, he is African American and black.

72. Plaintiff suffered an adverse employment action, *i.e.*, Blue Ridge Tire Center terminated his employment.

73. Plaintiff was performing satisfactorily at the time of his termination, and there was no basis to terminate Plaintiff.

74. Upon information, knowledge, and belief, Blue Ridge Tire Center treated Plaintiff differently than a similarly-situated Caucasian employee under similar circumstances.

75. Blue Ridge Tire Center's actions as alleged herein were done intentionally and with reckless disregard for the law and for the impact such actions would have on Lee. Therefore, an award of punitive damages is appropriate and hereby demanded.

### CONCLUSION

WHEREFORE, Dimetrious Lee prays for judgment against Defendant Stegall, Inc. *d/b/a* Blue Ridge Tire Center for compensatory damages, punitive damages, equitable relief, pre- and post-judgment interest from June 30, 2020, costs expended herein, and attorney's fees to the extent recoverable by law, and for such other and further relief as may be just and equitable.

### DEMAND FOR JURY TRIAL

76. Plaintiff hereby demands trial by jury.

                Respectfully submitted,
                DIMETRIOUS LEE

                */s/ Meghan A. Strickler*
                Of Counsel

Melvin E. Williams (VSB No. 43305)
   *mel@melwilliamslaw.com*
Meghan A. Strickler (VSB No. 88556)
   *meghan@melwilliamslaw.com*
MEL WILLIAMS PLC
1320 Third Street, SW
Roanoke, Virginia 24016
(540) 266-7800
(540) 206-3857 *facsimile*
    *Counsel for Plaintiff*

11