IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DIMETRIOUS LEE, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action No. 7:21-cv-00528 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| STEGALL, INC., *d/b/a* ) | United States District Judge |
| BLUE RIDGE TIRE CENTER ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Dimetrious Lee sued his former employer, Stegall, Inc. d/b/a Blue Ridge Tire Center (BRTC), alleging the following: (1) failure to pay minimum wages in violation of the Fair Labor Standards Act (FLSA) as provided in the Emergency Paid Sick Leave Act, a division of the Families First Coronavirus Response Act; (2) retaliation in violation of the FLSA; and (3) racial discrimination in violation of Title VII of the Civil Rights Act of 1964.  (Compl., Dkt. No. 1.)  The case is before the court on BRTC's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 4.)  The motion has been fully briefed and argued.  For the reasons that follow, the court will deny BRTC's motion with respect to the FLSA claims and grant BRTC's motion with respect to the Title VII claim.

I.  BACKGROUND

**A.  Factual Background**

Lee started a full-time position as a roadside service technician at BRTC in March 2018.  (Compl. ¶ 7, Dkt. No. 1.)  He worked there without incident or discipline, "more than satisfactorily fulfilling the obligations of his employment," until June 25, 2020.  (*Id.* ¶ 8.)  That

1

day, Lee requested to be released early from work because he felt ill. (*Id.* ¶ 9.) Lee's general manager, Jim McCraney, asked if Lee could respond to one more job; Lee obliged and then went home. (*Id.* ¶¶ 10–11.)

After receiving a service call early the next morning, Lee quickly notified McCraney that he would not be able to respond because he continued to feel ill. (*Id.* ¶ 13.) Based on his symptoms, which included a fever, nausea, and headache, Lee suspected he might have contracted COVID-19. (*Id.* ¶ 14.) Lee told McCraney he was going to get tested for COVID-19; McCraney approved. (*Id.* ¶¶ 14–15.)

Later that day, McCraney requested an update on Lee's COVID-19 test. (*Id.* ¶18.) Lee told McCraney that he had an appointment for a test at CVS later in the afternoon. (*Id.* ¶ 19.) An hour after being tested, Lee received a text message from the president of BRTC, Andy Stegall, requesting that Lee call him. (*Id.* ¶ 21.) Lee called Stegall but did not receive an answer. (*Id.* ¶ 22.) Lee left a voicemail explaining the status of his COVID-19 test, and he never received a call back from Stegall. (*Id.*)

In the evening, Lee's symptoms worsened, "necessitating him to be transported via ambulance to the hospital." (*Id.* ¶ 25.) At the hospital, Lee received a doctor's note directing him and his family to quarantine until July 10, 2020, or until he received a negative COVID-19 test result. (*Id.* ¶ 26.) The next morning, Lee's wife called McCraney to explain that Lee and the family had been directed to quarantine, and that she would provide the doctor's note as soon as possible. (*Id.* ¶¶ 27, 29.)

On June 30, 2020, five days after his initial symptoms, Lee received the results of his COVID-19 test: he tested negative. (*Id.* ¶ 30.) Lee contacted Stegall to inform him of the negative test result and request "a couple of days off as he continued to feel ill." (*Id.* ¶ 31.)

2

Stegall told Lee to return his company truck to BRTC. (*Id.* ¶ 32.) When Lee complied, McCraney "informed Lee that he was terminated because he had been a no call, no show." (*Id.* ¶ 33.) The same day, Lee received mail notifying him of his termination. (*Id.* ¶ 34.) The notice of termination stated that Lee broke a policy of the Employee Handbook, but he had never received a copy of the handbook during his employment. (*Id.* ¶¶ 34–35.) Further, the notice stated that from June 26 to June 30 Lee was "a no call no show," and BRTC had "attempted each day to reach [Lee] multiple times with no success." (*Id.* ¶ 36.)

Additionally, Lee, an African American male, alleges that BRTC treated him differently than a similarly situated Caucasian roadside service technician who also reported to McCraney. (*Id.* ¶¶ 52–53.) "Upon information, knowledge, and belief, McCraney [] permitted Lee's co-worker to miss work on at least three [] occasions since 2018 for extended periods of time…to allow this employee to receive treatment for health care or medical related issues." (*Id.* ¶ 54.)

**B. The Families First Coronavirus Response Act (FFCRA)**

On March 18, 2020, Congress enacted the FFCRA to address pressing challenges presented by the global COVID-19 pandemic. A division of FFCRA, the Emergency Paid Sick Leave Act (EPSLA), provides that:

> An employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because:
>
> (1) the employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19.
>
> (2) The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19.
>
> (3) The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis….

Pub. L. No. 116-127, § 5102, 134 Stat. 178, 195 (2020).  Qualifying full-time employees are entitled to 80 hours of sick leave.  *Id.*  The act provides that "[a]fter the first workday (or portion thereof) an employee receives paid sick time…an employer may require the employee to follow reasonable notice procedures in order to continue receiving such paid sick time."  *Id.* § 5110(e).

The act prohibits an employer from discharging an employee who takes leave in accordance with the act.  Pub. L. No. 116-127, § 5104.  An employer who fails to provide the sick leave contemplated by the act will be considered to have failed to pay minimum wages in violation of 29 U.S.C. § 206 of the Fair Labor Standards Act (FLSA), and an employer who discharges an employee who takes leave in accordance with the act violates 29 U.S.C. § 215(a)(3) of the FLSA.  Pub. L. No. 116-127, § 5105.

The act also vests authority in the Secretary of Labor to issue regulations.  *Id.* § 5111.  In April 2020, the Secretary of Labor issued rules pursuant to this authority, including rules regarding the notice required by both the employer and the employee.  The regulations required employers covered by the act "to post and keep posted on its premises, in conspicuous places a notice explaining the FFCRA's paid leave provisions and providing information concerning the procedures for filling complaints of violations of FFCRA with the Wage and Hour Division."  26 C.F.R. § 826.80(a).  Employees were also required to give employers notice.  Specifically, an employer "may require an [e]mployee to follow reasonable notice procedures after the first workday (or portion thereof) for which an [e]mployee takes [p]aid [s]ick [l]eave…'"  26 C.F.R. § 826.90(a)(1).  "Notice may not be required in advance," but after the first workday, "it will be reasonable for an [e]mployer to require notice as soon as practicable under the facts and circumstances of the particular case."  If an employee failed to give such notice, the employer

"should give [the employee] notice of the failure and an opportunity to provide the required documentation prior to denying the request for leave." *Id.*

The regulations also provided for "[d]ocumentation of need for leave." 26 C.F.R. § 826.100. "An [e]mployee is required to provide the [e]mployer documentation containing the following information prior to taking [p]aid [s]ick [l]eave under the EPSLA: (1) Employee's name; (2) Date(s) for which leave is required; (3) Qualifying reason for the leave; and (4) Oral or written statement that the [e]mployee is unable to work because of the qualified reason for leave." *Id.*

The regulations also explained that an employee taking paid sick leave due to "experiencing symptoms of COVID-19 and seeking [a] medical diagnosis from a health care provider," must have experienced one of the following symptoms: "(i) Fever; (ii) Dry cough; (iii) Shortness of breath; (iv) Any other COVID-19 symptoms identified by the U.S. Centers for Disease Control and Prevention." 26 C.F.R. § 826.20(a). Further, any paid sick leave taken while experiencing symptoms and seeking a diagnosis was "limited to [the] time the [e]mployee is unable to work because the [e]mployee is taking affirmative steps to obtain a medical diagnosis, such as making, waiting for, or attending an appointment for a test for COVID-19." *Id.* § 826(a)(4)(v).

II.  DISCUSSION

**A. Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

5

to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The principle that the allegations in a complaint must be accepted as true is "inapplicable to legal conclusions," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

## B. Blue Ridge Tire Center's Motion to Dismiss

Defendant BRTC moves to dismiss all three counts of Lee's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. Count I: Failure to pay minimum wages in violation of the FLSA.

BRTC contends that Lee's first claim fails because Lee failed to comply with regulations, "which mandated specific documentation in order to take leave." (Mem. in Support of Mot. to Dismiss 3, Dkt. No. 5 (citing 29 C.F.R. § 826.100(a).) Specifically, BRTC contends that Lee (1) needed to provide documentation prior to taking sick leave, (2) never provided the doctor's note he allegedly received, and (3) never provided the name of his healthcare provider. Lee argues that the clause of § 826.100 that required prior notice was invalid; he properly put BRTC on notice by orally notifying his supervisor that he was ill with COVID-19 symptoms and planned to be tested for COVID-19; and he was unable to provide the documentation because BRTC immediately fired him after his negative COVID-19 test results.

*a. Lee did not need to provide documentation prior to taking EPSLA leave.*

The issue of the timing of notice in this case results from the seemingly contradictory nature of the regulations promulgated in furtherance of the EPSLA. One regulation provided that "[n]otice may not be required in advance," while another provided that documentation must

be provided *prior* to taking sick leave." *Compare* 26 C.F.R. § 826.90 *with* 26 C.F.R. § 826.100. The former regulation mirrors the statutory language in the EPSLA, while the latter seems to conflict with it. Indeed, in August 2020, the Southern District of New York invalidated the temporal element of the document requirement in § 826.100 because "it is inconsistent with…[§ 5110(5)(E)'s] unambiguous notice provisions [and] fails at *Chevron* step one."[1] *New York v. United States Dep't of Lab.*, 477 F. Supp. 3d 1, 17 (S.D.N.Y. 2020).

This court agrees. The regulatory requirement of documentation *prior* to taking paid sick leave under the EPSLA is in unambiguous conflict with the notice provisions set forth in § 5110(5)(E), which provides "employers *may* require the employee to follow reasonable notice procedures" "*[a]fter the first workday*."[2] As one district court noted, "requiring documentation from an employee in advance of an absence qualifying for EPSLA paid sick leave is nonsensical and, as a practical matter, results in the untenable choice for employees to come to work sick rather than risk going unpaid for failing to document in advance." *Redmon v. Advanced Elec. Sys., Inc.*, Civil Action No. 3:21-cv-90, 2021 WL 4477073, at *5 (W.D. Ky. Sep. 29, 2021).

The fact that the "[r]ule was in place at the time of Plaintiff's firing is irrelevant when the [r]ule itself was not lawfully promulgated." *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 677 (E.D. Pa. 2021). The definition in the EPSLA itself is the one that this court should consider and apply. *See id.*; *Beltran v. 2 Deer Park Drive Operations LLC*, Civil Action No. 20-8454, 2021 WL 794745, at *7 (D.N.J. Feb. 28, 2021). That is, "[a]fter the first workday (or portion thereof) an employee receives paid sick time under this Act, an employer may require the

---

[1] The Department of Labor subsequently revised the temporal element of the documentation requirement in September 2020; however, both the Southern District of New York's opinion and the revised regulation occurred after the events of this case.

[2] Any attempt to distinguish "documentation" from "notice" is unpersuasive. *See New York v. Dep't of Lab.*, 477 F. Supp. 3d 1, 18 (S.D.N.Y. 2020).

7

employee to follow reasonable notice procedures in order to continue receiving such paid sick time." Pub. L. 116-127, § 5110(5)(E), 134 Stat. 178, 201 (2020).

### *b. Lee's failure to provide documentation is not fatal to his claim.*

While this court finds that BRTC could not require Lee to provide documentation prior to taking leave, BRTC could require Lee to provide notice after the first workday (or portion thereof). *New York v. United States Dept of Lab.*, 477 F. Supp. 3d at 18 ("[T]he substance of the documentation requirement, as distinguished from its temporal aspect, stand[s]."). Lee admits that he never provided any documentation to BRTC. BRTC considers this failure to be fatal. Lee contends that it is excused due to BRTC's immediate termination of his employment.

Considering only the facts alleged in the complaint, the court finds that Lee's failure to provide documentation to BRTC is not fatal to his claim. Lee allegedly provided timely oral notice that he was ill with COVID-19 symptoms on the morning of June 26, 2020, and he notified his supervisor of his appointment for a COVID-19 test that same afternoon. The next day, Lee's wife notified his supervisor that his family had been directed to quarantine by a doctor the previous evening and that she would provide documentation "as soon as possible." The complaint alleges that McCraney "did not object" to this plan of action. Importantly, nowhere in the complaint does Lee allege that anyone from BRTC requested the required documentation from him.[3] The complaint states the opposite: BRTC permitted Lee to take time off to get tested for COVID-19 and did not object to being provided documentation after his quarantine.

Lee allegedly provided BRTC notice of his negative COVID-19 test the day that he received it. At that point, the complaint alleges that BRTC quickly terminated Lee, not that BRTC requested the required documentation. By terminating Lee, BRTC effectively denied

---

[3] Additionally, at this stage in the proceedings, the court does not know of BRTC's daily operating procedures for taking leave or whether BRTC complied with its notice obligations under the act.

8

Lee's leave under the act. But the regulations provide that "[i]f an employee failed to give such notice, the employer should give [the employee] notice of the failure and an opportunity to provide the required documentation prior to denying the request for leave." 26 C.F.R. § 826.90(a)(1). It would be nonsensical for this court to dismiss Lee's claim because he did not provide documentation after he was already terminated, especially in the absence of any request for such documentation by BRTC.[4]

### 2. Count II: Retaliation in violation of the FLSA.

Next, BRTC contends that Lee's second claim fails because Lee was terminated for requesting additional time off after receiving a negative test result for COVID-19, not for taking leave protected under the FFCRA. In opposition, Lee points to the allegations in his complaint, which allege that Lee was terminated for the leave he took, not the additional leave he requested. (*See, e.g.,* Compl. ¶ 65.)

BRTC's entire argument for dismissal of this claim revolves around the fact that Lee's request for additional time off after his negative test result was not protected by the FFCRA. By all accounts, BTRC is right; however, Lee did not allege that he was terminated for requesting additional leave. Rather, in no uncertain terms, Lee alleged he was terminated for the leave he took from June 26, 2020, to June 30, 2020, prior to testing negative for COVID-19. (*See id.* ¶¶ 33, 36, 65.)

BRTC jumps the gun. At this stage in the proceedings, the court must accept the plaintiff's allegations as true. The court cannot credit BRTC's contention that Lee was fired for

---

[4] As for BRTC's third contention that Lee never provided the name of his healthcare provider, Lee did not need to do so based on the facts alleged. Lee qualified for sick leave under the EPSLA on two grounds: (1) he was experiencing symptoms consistent with COVID-19 and seeking a diagnosis through a COVID-19 test, and (2) he had been advised by a health care provider to self-quarantine for 14 days or until he received a negative test. And, again, based on the facts alleged, BRTC never requested documentation of the identity of Lee's health care provider.

a reason different than what Lee has explicitly pled. For these reasons, the court will deny BRTC's motion to dismiss Lee's retaliation claim.[5]

### 3. Count III: Race Discrimination in violation of Title VII of the Civil Rights Act.

Finally, BRTC contends that Lee fails to state a claim for race discrimination under Title VII because he has failed to identify a similarly situated comparator to support a reasonable inference that race was a motivating factor in his termination. BRTC argues the unidentified comparator is not sufficiently similar due to a lack of detail about the comparator and the unique context of the COVID-19 pandemic. Lee responds that he has sufficiently pled a comparator: a Caucasian person in the same position, with the same supervisor, who on three occasions was permitted to take extended sick leave.

"Title VII prohibits an employer from 'discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.'" *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing 42 U.S.C.A. § 2000e–2(a)). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* Of course, a plaintiff "need not plead a prima facie case to survive a motion to dismiss," but "a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (per curiam).

---

[5] Lee simultaneously filed a motion to strike (Dkt. No. 9) with his opposition brief. As the court stated at the hearing, the court has not considered any extrinsic evidence or related arguments that go beyond the face of Lee's complaint or other appropriate considerations on a motion to dismiss. At the hearing, by oral order, the court denied Lee's motion to strike as moot. (Dkt. No. 15.)

"[Lee] is not required to identify a similarly situated white comparator to prove [his] discrimination claim," but Lee does rely on such a comparator in his complaint. *Id.* at 748. "[T]he similarity between comparators…must be clearly established in order to be meaningful." *Id.* "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.*

In *Swaso*, the Fourth Circuit found that a plaintiff bringing an employment discrimination claim "failed to provide any factual enhancement regarding [her] alleged comparators…that would permit the court to reasonably infer their similarity." *Id.* at 749. The plaintiff schoolteacher pled that, after taking a medical leave of absence, she was denied a return to work despite the principal of her school previously allowing "several white teachers to return to work from medical leave, some of whom had more serious health conditions than [plaintiff] and some of whom had more restrictions." *Swaso v. Onslow Cnty. Bd. of Educ.*, No. 7:13-CV-224-FL, 2016 WL 6238523, at *2 (E.D.N.C. Oct. 25, 2016), *aff'd*, 698 F. App'x 745 (4th Cir. 2017). Upon review, the Fourth Circuit referred to the pled facts as "bare allegations" and noted that the plaintiff failed to provide allegations "such as the medical conditions or restrictions of the white teachers who were allowed to return, or the positions or job requirements of those employees allowed to return [with a similar restriction]." *Swaso*, 698 F. App'x at 749. Thus, the plaintiff fell "short of alleging facts from which to reasonably infer that their difference in treatment was attributable to racial discrimination." *Id.* The Fourth Circuit affirmed the district court's judgment granting the defendant's motion to dismiss for failure to state a claim. *Id.*

The court agrees with BRTC that Lee has failed to identify a sufficiently similar comparator to give rise to an inference of discrimination on the basis of race in violation of Title VII. While Lee has alleged that a Caucasian roadside service technician who was supervised by McCraney was permitted sick leave on at least three occasions "since 2018" for extended periods of time, the court finds that the unique context of the COVID-19 pandemic is a differentiating circumstance that distinguishes Lee from his comparator. There are no allegations that Lee's comparator's health issues stemmed from COVID-19, and at least one occasion must have occurred prior to the onset of the pandemic. Similar to the plaintiff in *Swaso*, Lee's complaint lacks adequate factual enhancement to give rise to an inference of race discrimination. Simply pointing to an unnamed Caucasian coworker who was allegedly granted sick leave for an undisclosed medical condition on a few occasions for up to two years prior to the events of this case does not give rise to plausible inference. The lack of a similarly situated comparator in tandem with the absence of any other allegations that would give rise to an inference that Lee's termination was based on his race is insufficient to meet the pleading standard. The court will grant BRTC's motion to dismiss for failure to state a claim for race discrimination under Title VII.

### III. CONCLUSION

For the reasons stated above, the court finds that Lee has sufficiently pled claims for failure to pay minimum wages and retaliation in violation of the FLSA; however, he has not sufficiently pled a claim for race discrimination under Title VII. Therefore, the court will issue an appropriate order denying BRTC's motion to dismiss with respect to Lee's FLSA claims

(counts I and II) and granting the motion with respect to Lee's Title VII claim (count III).

An appropriate order will follow.

Entered: August 31, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

13